IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 12, 2021 Session

## STATE OF TENNESSEE v. JENNIFER MURRAY JEWELL

**Appeal from the Circuit Court for Williamson County**
**No. I-CR116885     Joseph A. Woodruff, Judge**

———————————————————

**No. M2019-02160-CCA-R3-CD**

———————————————————

The Defendant, Jennifer Murray Jewell, appeals the trial court's order revoking her ten-year probationary sentence for theft of property valued at more than $60,000 but less than $100,000 after determining that she violated the conditions of her probation by committing a new theft. On appeal, the Defendant argues that the trial court abused its discretion when it found that the evidence was sufficient to support her probation revocation and when it ordered her to serve her original sentence in confinement without making "explicit findings about the efficacy of a probationary term with modified conditions." After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined. TIMOTHY L. EASTER, J., not participating.

Vanessa Pettigrew Bryan, Public Defender; Jessica F. Butler, Assistant Public Defender (on appeal); Richard Strong (at hearing), Franklin, Tennessee, for the appellant, Jennifer Murray Jewell.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tammy J. Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.     Facts

This case arises from the Defendant's 2015 conviction for theft of property over $60,000. The trial court determined that the victim, Wilson and Associates Engineering and Surveying, P.C., suffered a loss of $341,122.65. The Defendant, while working as a

bookkeeper for Wilson and Associates ("Wilson"), stole money through payroll, and she made fraudulent credit card charges on Wilson's company credit card. The Defendant also made fraudulent purchases through Wilson's company checking account for repairs to her home. Pursuant to a plea agreement, the Defendant was sentenced to ten years as a Range I offender, suspended to supervised probation. She was also ordered to pay restitution of $47,000, to be paid in monthly installments of $500. *State v. Jennifer Murray Jewell*, No. M2015-02141-CCA-R3-CD, 2017 WL 65242 (Tenn. Crim. App., at Nashville, Jan. 6, 2017) *no perm. app. filed*; *State v. Jennifer Murray Jewell*, No. M2017-01931-CCA-R3-CD, 2019 WL 2004369 (Tenn. Crim. App., at Nashville, May 7, 2019) *no perm. app. filed*. On June 8, 2017, the trial court issued a probation violation warrant based on Defendant's arrest in Maury County on a new charge of theft of property valued at more than $1,000 but less than $10,000.

At the hearing on the probation violation, Iris Reed testified that she owned Reed Landscaping in Spring Hill. She said that she hired the Defendant in April 2016 as a bookkeeper for Reed Landscaping, and the Defendant was responsible for accounts payable and receivable, reconciling bank statements, and payroll. The Defendant did not have the authority to sign checks. Ms. Reed testified that she was unaware of the Defendant's criminal record at the time that she hired the Defendant. "Someone" later told her about it. Ms. Reed testified that she requested a formal background check on the Defendant but did not inform the Defendant of the request.

Ms. Reed testified that Reed Landscaping used QuickBooks software for general bookkeeping and payroll accounting and Intuit, the QuickBooks payroll service, to process their payroll. Most employees received their pay through direct deposit, and Intuit debited the company's bank account every week to cover the payroll amount. Reed Landscaping retained pay notices or check stubs as reported by Intuit for each employee's weekly deposit. The Defendant was responsible for processing the payroll while she was employed by Reed Landscaping. Ms. Reed testified that there was a problem with Intuit in August and September 2016, and payroll could not be processed for a total of three pay periods in August. She said that paper checks had to be written out to the employees during that time rather than direct deposit. Ms. Reed agreed that she signed some of the checks, and the office manager, Letitia Schmidt, also signed some of them.

Ms. Reed testified that the Defendant's employee file showed she signed two W-4s: the first one in April 2016 claimed ten withholding allowances, while a second W-4 in early November 2016 claimed one allowance. Ms. Reed testified that the Defendant received a loan of $900 from Reed Landscaping on August 1, 2016, which was documented in the Defendant's personnel file. Ms. Reed explained that the loan was to be repaid at $100 per week, beginning on August 5, 2016. The payment was supposed to be deducted from the Defendant's wages through the payroll system. The Defendant eventually left employment with Reed Landscaping due to a dispute with her hours and pay.

Ms. Reed testified that in January 2017 she hired a new bookkeeper, Beth Pennington, who alerted Ms. Reed to an issue she found in the payroll account. Ms. Pennington determined that the Defendant had changed her own deductions for three pay periods when the direct deposit system was down that resulted in a $1,200 loss to the company. The Defendant was arrested on May 23, 2017, on a warrant charging her with theft over $1,000.

Ms. Reed denied reporting the theft to police in retaliation for accusations the Defendant had made against her and Reed Landscaping when the Defendant filed for unemployment compensation after she left the company. The Defendant made numerous allegations that Reed Landscaping engaged in fraudulent business practices, such as telling her not to submit legally-required contracts and employment documents, and that the owner created a hostile work environment. Ms. Reed acknowledged that Defendant was initially denied unemployment benefits, but had appealed to the Appeals Tribunal of the Tennessee Department of Labor and Workforce Development. The Defendant was awarded benefits on April 5, 2017. Ms. Reed could not recall but did not dispute that she made the initial complaint to the Spring Hill Police Department on April 7, 2017. Ms. Reed then sought an appeal before the Office of Administrative Review of the award of the Defendant's unemployment benefits. The decision of the tribunal was reversed and the Defendant was ultimately denied unemployment benefits.

Beth Pennington testified that she had between twenty-five and thirty years of bookkeeping experience, and she was "QuickBooks trained and certified." She was asked to review Reed Landscaping's records when she began working there in January 2017. Ms. Pennington testified that she needed to reconcile approximately two months of bank statements but she was unable to find any prior bank statements for the company, which she found to be "disconcerting." Ms. Pennington then asked Ms. Reed to obtain Reed Landscaping's bank statements from 2016, and Ms. Pennington testified that they reconciled perfectly until August 2016. Ms. Pennington explained:

> When a bank statement doesn't reconcile, there's a problem somewhere. It could have been in QuickBooks, that QuickBooks had done something incorrectly or there were checks missing or something hadn't been entered correctly. It was just a problem and it needed to be investigated further.

Ms. Pennington testified that she checked each employee's W-4, including the Defendant's. She said that the Defendant's W-4 dated April 18, 2016, had ten allowances which caused her federal income tax withholding to be zero. Ms. Pennington noted that this was not an uncommon practice. She testified that on November 4, 2016, the Defendant changed her W-4 to one allowance which put the Defendant in a "very high withholding tax bracket." Ms. Pennington felt that the sudden change in the Defendant's W-4 status was unusual, so she reviewed the Defendant's pay stubs. She found that there was federal income tax withholding of $200 entered for each of the pay periods ending August 16,

August 23, and August 30, 2016, when the Defendant's W-4 reflected that the withholding should have been zero.

Ms. Pennington explained that as the bookkeeper, the Defendant was responsible for entering payroll numbers into QuickBooks, which then calculated each employee's net pay. She agreed that Letitia Schmidt also had access to Reed Landscaping's QuickBooks system. The payroll data was then transmitted to Intuit, which processed the payroll and generated automatic drafts for the employees who had signed up for direct deposit. However, for three pay periods in August 2016, QuickBooks was not operating correctly and could not "sync" with Intuit. During that time, the employees had to be issued paper checks. Ms. Pennington explained that the Defendant's pay stubs for the pay periods ending August 16, August 23, and August 30, 2016, while the Intuit payroll system was down, showed that the Defendant's net pay was $345.90 for two of the pay periods and $345.91 for one of the periods. However, the paper checks for those pay periods, which were issued on August 18, August 25, and September 1, 2016, that the Defendant either cashed or deposited were each in the amount of $745.91. When asked how the amount on the pay stubs differed from the paper checks, Ms. Pennington testified that the checks were altered to an amount different than the pay stub. She noted that it would be harder to alter the pay stub since it was generated through QuickBooks. Ms. Pennington also discovered that "[t]here were amounts entered into the [check] register which would have equaled the differences from the pay stubs and the checks." Ms. Pennington testified that the pay stubs for the three pay periods in question were printed sometime after the connection to QuickBooks was re-established.

Ms. Pennington testified that a total of $600 was remitted to the Internal Revenue Service ("IRS") from Reed Landscaping's account on the Defendant's behalf. However, the money was not actually held out of the Defendant's net pay. For the same three pay periods, the pay stubs also showed an adjustment of $200 to the Defendant's net pay for repayment of her employee loan, for a total of $600. While Reed Landscaping's records showed that this debit had been applied to the Defendant's loan balance, Ms. Pennington found that no actual payment had been made by the Defendant. She also discovered two false entries in the QuickBooks check register for payments to vendors for equipment repairs. These two entries made the bank statements for August and September 2016 appear to balance but there was no paperwork to detail that the equipment repairs took place.

The State introduced evidence that the Defendant was convicted in 1991 of one count of theft less than $500, three counts of theft more than $500 but less than $1,000, and one count of theft more than $1,000 but less than $10,000. The victim in that case was Franklin Mechanical Contractors, and the Defendant was ordered to pay restitution in the amount of $5,957.52.

The trial court summarized the evidence presented at the probation revocation hearing and found that the State had carried its burden of proving the Defendant's probation violation by a preponderance of the evidence. The trial court further found:

> The Defendant is a skilled and experienced bookkeeper with an extensive work history as a bookkeeper for small businesses. She has a prior conviction for theft accomplished in part through the creation of a bogus credit balance for Federal Income Tax withholding when in fact no [re]mittance has been made. The conduct constituting the probation violation involves theft from an employer who hired [the] Defendant into a position of trust. The offense for which she was convicted and sentenced to probation also was committed against an employer who had hired [the] Defendant into a position of trust. [The] Defendant has a history of prior convictions in 1991 for both felony and misdemeanor theft offenses occurring in 1989 and 1990. The circumstances of the violation, which involve deceit and prior planning, and elaborate efforts to avoid detection. The similarity between the conduct constituting the violation and the offense of which she was convicted and placed on probation, as well as [the] Defendant's criminal history demonstrates [the] Defendant is a poor candidate for rehabilitation through further probation or alternative sentencing. To return the Defendant to supervised probation even with a split sentence would not serve the interest of either general or specific deterrence and would depreciate the serious nature of the offenses for which [the] Defendant was originally convicted.

The trial court also noted that it had "considered all the facts and circumstances presented, exhibits, arguments of counsel for the parties and the Tennessee Criminal Sentencing statutes." The trial court revoked the Defendant's probation and ordered her to serve the original ten-year sentence in confinement. It is from this judgment that the Defendant now appeals.

## II.    Analysis

On appeal, the Defendant contends that the trial court erred when it found that the evidence was sufficient to support her probation revocation. She further contends that "[a] separate abuse of discretion analysis is required when addressing the trial court's sentencing disposition" and that the trial court erred when it ordered her to serve her sentence without making "explicit findings about the efficacy of a probationary term with modified conditions." The State counters that the preponderance of the evidence supported the probation violation and that the trial court did not abuse its discretion when it ordered a sentence of full confinement. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2019), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2019). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), - 310 (2019); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

The record in this case provided substantial evidence to support the trial court's revocation of probation. The proof showed that on three occasions while the company's payroll system was down, the Defendant altered her paystubs to create federal income tax withholdings that the company forwarded to the IRS on her behalf. This reduced her net pay as shown on her pay stub by $200 for each of the three weeks. The Defendant also awarded herself a $200 credit each pay period to repay a personal loan made to her by the company. We note that the Defendant's fraudulent payments to her loan resulted in a theft and not a civil matter as argued by the Defendant in her brief. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a) (2018). The Defendant received three paychecks issued at her normal net pay without any of the deductions listed on her paystub being taken out of that amount. This resulted in a $1,200 loss to the company. To conceal her theft, the Defendant made fictional entries in the company's checking account records in QuickBooks for equipment repair to ensure that the bank statements for August and September 2016 reconciled, despite her theft.

The Defendant asserts that the trial court failed to consider evidence that Ms. Reed contacted the police with allegations of theft in retaliation for the Defendant's award of

unemployment benefits and her claims of fraudulent business practices by the company. The trial court, however, noted in its findings that it had considered all of the facts and circumstances presented, exhibits, and the arguments of counsel. The proof adduced at the revocation hearing established by a preponderance of the evidence that the Defendant violated the terms of her probation. Accordingly, the trial court did not abuse its discretion when it revoked the Defendant's probation.

After finding that the Defendant had violated the terms of her probation, the trial court retained discretionary authority pursuant to Tennessee Code Annotated section 40-35-310(b), to order the Defendant to serve her sentence in confinement. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 67; *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007); *see also State v. Ronald Davis*, No. W2019-01315-CCA-R3-CD, 2020 WL 6127015, at *3 (Tenn. Crim. App., at Jackson, Oct. 16, 2020), *no perm. app. filed*; *State v. Michael Lee Hooper*, No. E2016-02538-CCA-R3-CD, 2017 WL 6375955, at *3 (Tenn. Crim. App., at Knoxville, Dec. 13, 2017), *no. perm. app. filed*. Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999) *perm. app. denied* (Tenn. June 28, 1999); *see also State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002) *no perm. app. filed*; *State v. Makoyous Houston*, No. E2018-01118-CCA-R3-CD, 2019 WL 4274147, at *4 (Tenn. Crim. App. Sept. 10, 2019) *perm. app. denied* (Tenn. Jan. 16, 2020).

We conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve her original ten-year sentence. The proof at the probation revocation hearing shows that the Defendant, while on probation, committed a second theft from her employer which was almost identical to the one in this case. The Defendant also had one misdemeanor conviction and four felony convictions from 1991 involving theft from another business for which she received probation, clearly showing that measures less restrictive than confinement have been applied unsuccessfully to the Defendant. Accordingly, the trial court did not abuse its discretion when it determined the consequences for the Defendant's probation violation.

Although the Defendant argues that the trial court failed to make "explicit findings about the efficacy of a probationary term with modified conditions," this is not statutorily mandated. Further, it is clear from the record that the trial court carefully and conscientiously exercised its discretion in determining the proper consequence of the Defendant's probation violation. The Defendant is not entitled to relief.

## III.    Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____

_____
ROBERT W. WEDEMEYER, JUDGE